UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW R.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

21-CV-00173-LJV
DECISION & ORDER

---

On January 29, 2021, the plaintiff, Matthew R. ("Matthew"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On December 20, 2021, Matthew moved for judgment on the pleadings, Docket Item 7; on May 19, 2022, the Commissioner responded and cross-moved for

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Matthew applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

judgment on the pleadings, Docket Item 9; and on June 30, 2022, Matthew replied, Docket Item 11.

For the reasons that follow, this Court denies Matthew's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443,

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); see McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson, 817 F.2d at 986.

## DISCUSSION

### I.   THE ALJ'S DECISION

On April 28, 2020, the ALJ found that Matthew had not been under a disability between April 30, 2019, and the date of the decision.  See Docket Item 6 at 14-24.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a), 416.920(a).  See id.

At step one, the ALJ found that Matthew met the insured status requirements of the Act through September 30, 2018, and had not engaged in substantial gainful activity since his alleged disability onset date of April 30, 2019.  Id. at 17.  At step two, the ALJ found that Matthew suffered from several severe, medically determinable impairments: "deep vein thrombosis with pulmonary embolism, chondromalacia of the left knee, [a] partial tear of the Achilles tendon of the left ankle[,] and obesity."  Id.

At step three, the ALJ found that Matthew's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1. *See id.* at 17. More specifically, the ALJ found that Matthew's physical impairments did not meet or medically equal listing 1.02 (major dysfunction of a joint), listing 3.02 (chronic respiratory disorder), or listing 4.10 (aneurysm of aorta or major branches). *Id.*

The ALJ then found that Matthew had the RFC[4] to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that:

> [A]fter 30 minutes of standing, [Matthew] would need to sit for a minute or two, without going off-task [*sic*] or leaving the workstation. [He] can occasionally climb ramps and stairs, but [he] cannot climb ladders, ropes[,] or scaffolds. [He] can occasionally balance, stoop, kneel, crouch[,] or crawl. [He] cannot work at unprotected heights, and [he] cannot be exposed to dangerous, moving, mechanical parts. [He] can only have occasional exposure to humidity and wetness, dust, odors, fumes[,] and other pulmonary irritants. [He] would be off-task five percent of the time, in addition to normal breaks.

*Id.* at 17-21.

At step four, the ALJ found that Matthew could perform past relevant work as a collection clerk, thereby ending the five-step analysis. *Id.* at 21; *see Dictionary of Occupational Titles* 241.357-010, 1991 WL 672249 (Jan. 1, 2016). Therefore, the ALJ found that Matthew had not been under a disability or entitled to DIB or SSI since his alleged disability onset date of April 30, 2019. *See* Docket Item 6 at 23-24.

---

[4] A claimant's residual functional capacity ("RFC") is the most he "can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

## II. ALLEGATIONS

Matthew argues that the ALJ erred in two ways. *See* Docket Item 7-1 at 16-24. First, he argues that the ALJ erred by crafting highly specific RFC limitations that were not tethered to a particular piece of evidence in the record. *See id.* at 16-20. Second, he argues that the ALJ erred by relying on the "vague" opinion of a consultative examiner, Michael Rosenberg, M.D. *See id.* at 20-25. For the reasons that follow, this Court disagrees.

## III. ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019). As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

### A. Off-Task Limitation

Matthew argues that the ALJ's finding that he would be "off-task" five percent of the time was unsupported by any evidence in the record and "manufactured . . . to avoid a finding of disability." Docket Item 7-1 at 19. Matthew's argument is misplaced.

It is true that there is no opinion in the record explicitly stating that Matthew would be off task for five percent of the workday; in fact, there is no opinion in the record about any sort of off-task limitation. But the ALJ certainly did not err to Matthew's detriment by concluding that Matthew had a *more* restrictive RFC than suggested by any of the opinions in the record. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020); *see also Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited Plaintiff's testimony that she could not focus and was easily distracted . . . and assessed a more generous limitation of 5% off-task time. The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand.").

In fact, Matthew's argument—that a court should remand when an ALJ finds a claimant to be *more* restricted than the medical providers opined—makes no sense and would turn the Social Security review process on its head. *See, e.g., Danielle S. v. Comm'r of Soc. Sec.*, 516 F. Supp. 3d 286, 291 (W.D.N.Y. 2021) ("As to the ALJ's assessment of a stress limitation more restrictive than that identified by Dr. Santarpia, this is not a basis for remand."); *Orlando A. v. Comm'r of Soc. Sec.*, 2023 WL 5344934, at *4 (W.D.N.Y. Aug. 21, 2023) ("Moreover, even if the ALJ erred with respect to Dr. Siddiqui's opinion, Plaintiff fails to demonstrate prejudice warranting remand. . . . The ALJ's assessment of physical limitations more restrictive than Dr. Siddiqui identified is not a basis for remand . . . ."). Taken to its logical conclusion, Matthew's argument

6

suggests that if the ALJ agreed entirely with the all of the opinion evidence and crafted a less restrictive RFC, without any sort of off-task limitation, the ALJ would not have erred. On remand, then, the ALJ could simply do just that.  And that, of course, means that remanding makes no sense.

What is more, by including the five percent off-task limitation, the ALJ increased her own burden, as she had to ask the vocational expert whether someone with that limitation could perform any of Matthew's past relevant work.  *See* Docket Item 6 at 72. So the ALJ certainly did not include the off-task limitation to "avoid a finding of disability."

Matthew suggests that this Court's ability to perform meaningful judicial review is hampered by the ALJ's failure to provide sufficiently discernable reasoning for including an off-task limitation.  *See* Docket Item 7-1 at 17-18.  But the ALJ explained her reasoning: "[Matthew] would be off-task [*sic*] five percent of the time, in addition to normal breaks in an eight-hour workday, due to his chronic swelling and pain of the left lower extremity."  Docket Item 6 at 21.  Because the ALJ adequately explained her reasoning for including a five percent off-task limitation in Matthew's RFC, and because the inclusion of that limitation was in no way to Matthew's detriment, Matthew's first argument falls short.

### B.  Dr. Rosenberg's Opinion

Matthew also argues that the ALJ erred by finding Dr. Rosenberg's opinion "persuasive" when it was too vague to inform the ALJ's RFC assessment.  *See* Docket Item 7-1 at 20.  But the ALJ properly considered Dr. Rosenberg's opinion under the

regulations, and the RFC determination as a whole was supported by substantial evidence.

For claims filed on or after March 27, 2017, such as Matthew's, the ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)) (internal quotation marks omitted). Instead, the ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he or] she finds the medical opinions in the case record." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).

The Code of Federal Regulations lists five factors for the ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "that tend to support or contradict" the opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The ALJ always is required to "explain how [he or] she considered the supportability and consistency factors" because they are "the most important factors," and "may, but [is] not required to, explain how [he or] she considered the [remaining] factors." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

On May 1, 2018, Dr. Rosenberg examined Matthew and opined, among other things, that Matthew had mild restrictions in performing activities requiring: (1) prolonged uninterrupted walking and standing; (2) prolonged uninterrupted squatting

8

and kneeling; and (3) prolonged uninterrupted use of his feet, such as the use of a foot control.  *See* Docket Item 6 at 613.  Dr. Rosenberg concluded that these limitations were necessary because the "range of motion of [Matthew's] left ankle does elicit left lower leg pain."  *Id.*

The ALJ found Dr. Rosenberg's opinion "persuasive."  *Id.* at 20.  The ALJ concluded that the opinion was supported by Dr. Rosenberg's concurrent examination showing chronic swelling of the left leg and that Matthew suffered pain "while walking or with range of motion of his left ankle."  *Id.*  The ALJ also determined that the opinion was consistent with August 2017 treatment records showing that Matthew suffered from mild dyspnea and a bilateral pulmonary embolism.  *Id.*; *see id.* at 254.

Matthew does not challenge the ALJ's articulation of the supportability and consistency factors, but he argues that Dr. Rosenberg's opinion "was vague and could not serve as substantial evidence supporting the RFC finding without further explanation of how [the] ALJ reached [her] conclusions."  Docket Item 7-1 at 20.  More specifically, Matthew claims that the terms "prolonged," "interrupted," and "mild" were not defined by Dr. Rosenberg and that his opinion therefore was too vague to inform the ALJ's RFC assessment.  *See id.*

The regulations use the terms "mild," "moderate," "marked," and "extreme" to describe a claimant's degree of limitation, but they do so only with respect to *mental* work-related functioning.  *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Nevertheless, an opinion using those terms to describe a claimant's degree of limitation in *physical* work-related functioning is not so vague as to prevent an ALJ from using them in making the RFC determination.  *See, e.g.*, *Snyder v. Saul*, 840 F. App'x 641,

9

643 (2d Cir. 2021) (opinions describing claimant's physical limitations as "moderate" consistent with RFC for light work.).  A "moderate" limitation in physical work-related functioning is consistent with "frequent, but not constant activity."  *See, e.g.*, *Danielle S.*, 516 F. Supp. 3d at 292 (internal quotation marks and citation omitted) (also collecting cases).  By extension, a "marked" limitation in physical work-related functioning is consistent with "occasional" activity, and a "mild" limitation, as used in Dr. Rosenberg's opinion, is consistent with "constant" activity.  *See Soc. Sec. Admin. Program Operations Manual Sys.* DI 25001.001.20 (Jan. 19, 2023).

Further, the terms "prolonged" and "uninterrupted," even if undefined by Dr. Rosenberg and the ALJ, are not uncommon in consultative examiners' opinions and can be used to inform the ALJ's RFC assessment.  *See, e.g.*, *Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) ("As a preliminary matter, the ALJ's determination that Lewis could perform 'light work' is supported by Dr. Datta's assessment of 'mild limitations for prolonged sitting, standing and walking' . . . ."); *Christopher C. v. Comm'r of Soc. Sec.*, 2022 WL 16797970, at *4 (W.D.N.Y. Nov. 8, 2022) (opinion providing for "mild restrictions for activities that require prolonged, uninterrupted bending, heavy lifting[,] and carrying" supported RFC for light work); *Elizabeth K. v. Kijakazi*, 2022 WL 1049244, at *3 (W.D.N.Y. Apr. 7, 2022) (opinion suggesting that claimant had a moderate restriction for "prolonged uninterrupted walking, standing, squatting, and kneeling" supported RFC for sedentary work).  So Dr. Rosenberg's opinion was not so vague that the ALJ could not use it in assessing Matthew's RFC.

Moreover, the ALJ's RFC determination was more restrictive than what was required by the limitations in Dr. Rosenberg's opinion.  Light work is defined as

10

employment that requires "lifting no more than 20 pounds at a time" and "a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b), 416.967(b). Courts in this circuit repeatedly have held that *moderate* limitations in walking, standing, or lifting are consistent with an RFC for light work. *See Snyder*, 840 F. App'x at 643; *White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (holding that consultative physician's opinion that plaintiff had moderate limitations in standing, sitting, and performing "other activities" supported RFC for light work); *Rayshown M. v. Comm'r of Soc. Sec.*, 2022 WL 4298263, at *4 (W.D.N.Y. Sept. 19, 2022) (collecting cases); *see also Anthony N. v. Comm'r of Soc. Sec.*, 2022 WL 1679414, at *5 (W.D.N.Y. May 26, 2022) (concluding that RFC for sedentary work accounted for moderate-to-marked limitations in prolonged standing, walking, and climbing). So the ALJ's conclusion that Matthew could perform light work with additional restrictions certainly was consistent with Dr. Rosenberg's assessment of only *mild* limitations.

But even if the RFC was not consistent with Dr. Rosenberg's opinion, that would not have been error because the ALJ's RFC determination was supported by other evidence in the record as well. *See Schillo*, 31 F.4th at 78 ("[An] ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."). For example, Matthew's ability to perform the lifting requirements of light work was supported by the opinion of the state agency disability examiner, J. Poss, M.D., who concluded that Matthew could lift twenty pounds occasionally and ten pounds frequently. *See* Docket Item 6 at 86, 99. And the specific sit/stand limitation in the RFC was supported by Matthew's hearing testimony, in which he stated that he could stand for roughly thirty minutes at a time, *see id.* at 65, as well

as by Dr. Poss's conclusion that Matthew could sit for a total of six hours and stand for a total of six hours during an eight-hour workday, *see id.* at 86, 99.

Matthew asserts, in a rather unclear way, that his RFC should have included a limitation for keeping his legs elevated.  *See* Docket Item 7-1 at 22.  He points to records from providers David Nye, M.D., and Mohammadreza Azadfard, M.D., instructing him to do just that.  *Id.*; *see* Docket Item 6 at 265, 395.  But that argument is at best misleading.

In July 2017, Matthew was hospitalized for a meniscal tear and a partial tear of his Achilles tendon, *see* Docket Item 6 at 254, and Dr. Nye recommended during a vascular consult that Matthew keep his "leg elevated above [his] heart when not walking," *id.* at 265.  And in September 2017, Matthew was hospitalized for complications stemming from substance use, but he chose to leave the hospital "against medical advice." *Id.* at 376 (emphasis removed).  Dr. Azadfard, the discharge physician, noted that Matthew had experienced a "severe interaction" of phenobarbital and Xarelto, Matthew's prescribed blood thinner, causing the latter to be less effective. *See id.* at 395.  As such, Dr. Azadfard recommended that Matthew keep his "leg elevated to decrease edema and pain." *Id.*

Dr. Nye's and Dr. Azadfard's instructions were related to discrete incidents occurring well before Matthew's alleged disability onset date of April 30, 2020.  *See* Docket Item 6 at 211.  And Matthew does not point to any evidence from the relevant period that would require a reasonable factfinder to conclude that he needed to keep his legs elevated.  *Cf. Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Here, Smith

had a duty to prove a more restrictive RFC, and [he] failed to do so."). The RFC therefore did not need to include a limitation for Matthew to elevate his legs.

In sum, the ALJ's RFC determination was consistent with, or more restrictive than, the evidence in the record. At their core, Matthew's arguments boil down to a disagreement with the ALJ's weighing of the evidence, but it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Matthew] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence. This Court will not second guess it.

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Matthew's motion for judgment on the pleadings, Docket Item 7, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 9, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:    October 19, 2023
         Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE